# EXHIBIT 3

CNA

CNA Insurance Companies –Robert Keller, P.O. Box 354, Riverton, CT 06065

**Robert F. Keller**
Claim Consultant
Telephone 860-379-2705
Messages 800-972-5550 ext. 6810
Facsimile 860-379-2709
Internet Robert.keller@cna.com

September 27, 2006
Certified Mail-Return Receipt Requested
#7002 3150 0004 8199 4241

Ms. Lori A. Corsi
Dimeo Construction Company
75 Chapman Street
Providence, RI 02905

Re: Claim #: 31545426
Insurer: Transcontinental Insurance Company
Policy Holder: Eagle Cornice Co.
Policy# C300131907 (07/01/03-07/01/04)
Additional Insured: Dimeo Construction Co.
Plaintiff: Henkel, William
Case Caption: Henkel v. Eagle Cornice v. Demeo
Loss: 03/08/04

Dear Ms. Corsi:

I am the claims consultant assigned to the above-entitled matter. This correspondence sets forth the coverage position of Transcontinental Insurance Company ("Transcontinental") with respect to the request by Dimeo Construction Company ("Dimeo") that Transcontinental provide a defense and coverage for a lawsuit filed by William J. Henkel, Jr. ("Henkel") in Rhode Island State Court (the "action"). Transcontinental has considered the complaint filed in the action, relevant contracts entered into between Dimeo and our insured, Eagle Cornice Company, Inc. ("Eagle") and the Transcontinental policy. Transcontinental agrees at this time to provide a qualified defense to Dimeo in the action to the extent that Dimeo is held liable for the negligence of Eagle specifically resulting from Eagles' work for Dimeo at the Providence College construction project and to the extent required pursuant to the terms and conditions of the Transcontinental policy and subject to its reservation of rights to deny coverage for any indemnity obligation not covered pursuant to the Transcontinental policy. Transcontinental further reserves its rights to revisit its decision to provide this defense should further investigation determine that Dimeo is entitled to insurance protection under other applicable liability insurance policies for the action. Transcontinental reserves its right to recoup from such insurers any amounts expended in the defense of Dimeo for the action. This letter will explain the basis for Transcontinental's coverage position.

Transcontinental understands that the following facts apply to the accident.

Henkel was employed as a sheet metal worker/foremen by Eagle. On the afternoon of March 8, 2004, Henkel and a coworker were preparing to install flashing near the roof of a college dormitory under construction in Rhode Island. Henkel was required to work on scaffolding at the fifth floor level of the construction site. The scaffolding was erected by another subcontractor to Dimeo. Eagle's subcontract with Dimeo required Eagle to reposition the planking and outriggers and provide safety equipment.

Henkel and a coworker were repositioning outriggers and planking to prepare a work area. Henkel states that he rested his thigh against what he thought was a bracing bar on the scaffolding. The brace was not secured and Henkel fell five stories through planking to the ground. He suffered leg injuries. Henkel was not wearing a safety line as required by worker safety regulations. He also accessed the scaffolding through the building window which was also a workers safety violation.

Eagle and Dimeo entered into Contract Order No. 4-7154 on August 18, 2003. Dimeo was a general contractor for a dormitory under construction at Providence College in Rhode Island. Eagle agreed to provide labor, materials, tools, equipment and supervision necessary to complete a modified bituminous roofing and sheet metal job. The contract required Eagle to provide all properly trained workers and all proper equipment necessary for the proper and safe completion of the project. The contract further noted that exterior scaffolding, to the roof eaves, will be provided by others. Eagle was responsible for moving planks and outriggers to allow the safe execution of the project.

The contract specified that Dimeo and all other additional insureds shall be named as additional primary insureds on a non-contributory basis. The contract provides a sample additional insured certificate that was approved by Dimeo.

A Construction Manager/Trade Contractor Agreement annexed to the contract, under Article XI – Indemnification provides:

"To the fullest extent permitted by Law, the Trade Contractor shall indemnify and hold harmless the Construction Manager, Owner and Architect and all their agents and employees from and against all claims, damages, losses and expenses, including attorneys fees, arising out of or resulting from the performance of the Trade Contractor's work provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease, or death or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom and (b) is caused in whole or in part by any negligent act or omission of the Trade Contractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable.

The Trade Contractor shall be responsible to the Construction Manager for the acts and omissions of his agents and employees, subcontractors performing work under a contract with the Trade Contractor and such subcontractors' agents and employees.

In any and all claims against Construction Manager, Owner and Architect or any of their agents or employees by an employee of the Trade Contractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Trade Contractor under Workmen's Compensation Acts, Disability Benefit Acts or other Employee Benefits Acts.

Appendix B of the contract at Paragraph 4 provides:

Insurance: Trade Contractors are responsible for their own insurance which is to be in accordance with the sample provided and naming both Dimeo Construction Company and others as noted as additional primary insureds on a non-contributory basis...

THE ACTION

Henkel filed a one count complaint against Dimeo in 2004. The complaint asserts that Dimeo was the general contractor for the Providence construction project. Henkel further alleges that he was in the course of his employment on March 8, 2004 and that scaffolding on to which he was instructed to work gave way causing him to fall and suffer injury. Henkel asserts that the fall was caused by Dimeo's carelessness and negligence. Dimeo failed to properly supervise the work, failed to provide a safe work place, failed to coordinate the work of its subcontractors and failed to supervise the erection of the scaffolding and staging.

In October 2004, counsel representing Dimeo filed an answer and third-party complaint against Eagle. Dimeo alleges in its third-party complaint that Eagle was contractually obligated to indemnify and hold harmless Dimeo for any claims, damages, losses, including attorney fees, arising out of or resulting from its negligence in the performance of its work under the contract regardless of whether the person asserting the claim was an employee of Eagle.

Dimeo asserts that to the extent that it is negligent, such negligence was passive while Eagle was actively negligent for Henkel's injuries.

Dimeo seeks contractual contribution and/or indemnification from Eagle for any amounts attributed to Eagle's negligence and attorney fees.

THE TRANSCONTINENTAL POLICY

Transcontinental issued the policy to Eagle which was in effect on the accident date. The liability limits are $1,000,000/occurrence and $2,000,000 in the aggregate. The declarations page identifies a specific premium charge for the subcontractor's blanket additional insured endorsement. The insuring agreement is provided through Commercial General Liability Coverage form CG0001 (10/01). It provides:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to

defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The policy is subject to certain exclusions:

2. **Exclusions**

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Under the definition section:

9. "Insured contract" means:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An additional policy exclusion excludes coverage for:

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

The insuring agreement is modified by the Contractor's Scheduled and Blanket Additional Insured Endorsement G-17957-G (Ed. 01/01). It provides:

A. **WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization, including any person or organization shown in the schedule above, (called additional insured) whom you are required to add as an additional insured on this policy under a written contract or written agreement but the written contract or agreement must be:

1. Currently in effect or become effective during the term of this policy; and

2. Executed prior to the "bodily injury," "property damage," or "personal and advertising injury".

B. The insurance provided to the additional insured is limited as follows:

1. That person or organization is an additional insured solely for liability due to your negligence specifically resulting from "your work" for the additional insured which is the subject of the written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured.

The endorsement further provides:

2. Paragraph **4.b.** of the Other Insurance Condition is deleted and replaced with the following:

4. **Other Insurance**

b. **Excess Insurance**

This insurance is excess over any other insurance naming the additional insured as an insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance be either primary or primary and noncontributing.

COVERAGE POSITION

Transcontinental agrees to provide a defense to Dimeo for the Henkel action subject to its reservation of rights. However, Transcontinental specifically reserves its right to withdraw from the defense, or any potential indemnification obligation to Dimeo, as an additional insured under the Transcontinental policy, should it be determined that Dimeo's sole negligence resulted in Henkel's injury or that Henkel's injury was not due to the negligence of Eagle specifically resulting from Eagles' work for Dimeo. Further, Transcontinental reserves its right to withdraw from the defense and any potential obligation to indemnify Dimeo under the Transcontinental policy to the extent that Dimeo is required to respond to Eagle's liability as an employer of Henkel. Such coverage is excluded by exclusion (e) Employer's Liability.

Further, Dimeo may be entitled to insurance coverage, as an additional insured, under insurance policies issued to other subcontractors working on the construction project giving rise to the Henkel action. It is the position of Transcontinental that such insurance coverage available to Dimeo, as an additional insured, is primary to insurance available to Dimeo under the Transcontinental policy. Accordingly, Transcontinental expects Dimeo to take no action that would prejudice any right to recover additional insurance for the Henkel action.

The Transcontinental policy provides under:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

* * *

8. **Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Transcontinental will require copies of all contracts between Dimeo and all subcontractors working on the project, including, but not limited to, Grand Masonry Co., Inc. and/or Brand Scaffolding, and involved in the erection of scaffolding at the work site. Transcontinental will also require Dimeo to provide copies of certificates of insurance or other documents identifying

the general liability insurers of all such subcontractors. Dimeo is reminded of its obligation to cooperate with Transcontinental in this regard.

Transcontinental has appointed the law firm of Adler, Pollock and Sheehan, One Citizens Plaza, 8th Floor, Providence, RI 02903 to provide a defense in the Henkel action. John Tarantino, Attorney of that office can be reached at 401-274-7200. Any questions concerning the appointment of defense counsel should be immediately brought to my attention. Otherwise, Transcontinental will assume that Dimeo does not object to the appointment of counsel. By copy of this letter, it is requested that your current attorney coordinate with the Adler, Pollock and Sheehan law firm as to defense going forward.

The reservations set forth above are not intended to be an exhaustive statement of all reasons upon which Transcontinental may rely in its determination of coverage for this matter. Transcontinental also reserves its rights to deny coverage on any of the grounds set forth above, or any other grounds which now exist or may arise in the future. Further, Transcontinental's investigation or request for information and cooperation from the insured is not intended, and should not be construed as, a waiver of any terms and conditions of the Transcontinental policy.

If you have any questions, please feel free to contact me at (860) 379-2705.

Very truly yours,

Robert Keller
Claims Consultant
Transcontinental Insurance Company

Cc: Michael S. Schwartz, Attorney
One Park Row
Providence, RI 02903

Adler, Pollock and Sheehan
One Citizens Plaza, 8th Floor
Providence, RI 02903
Attn.: John Tarantino, Attorney